**Robert L. Lewis (RLL8873)**
**Attorney for**
**109 West 69th Street LLC**                          **Hearing Dated:  December 7, 2010**
**7 Penn Plaza - # 1602**                              **Hearing Time:  10:00 A.M.**
**New York, N.Y. 10001**
**(212)-721-7353**


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

**In re**                                         Case No. 09-17126-mg

**GARY B. SCHAEFFER,**                             **Chapter 11**

                          **Debtor.**
-----------------------------------------------------------x


## CREDITOR'S RESPONSE TO DEBTOR'S REQUEST


**TO:    HON. MARTIN GLENN**
**       UNITED STATES BANKRUPTCY JUDGE**


  Robert L. Lewis, an attorney duly admitted to practice before this Court, under penalty of perjury, affirms the following to be true:

1.  I am the attorney for 109 West 69th Street, LLC. ("109")  and am fully familiar with the facts and circumstances contained herein.

2.  This is a claim based upon a default under a lease agreement, where the lease was guaranteed by two individuals.  Both of the guarantors have filed for bankruptcy protection.  The other guarantor of the lease is Maya Schaper under Case No. 09-16116 jmp.

3.  I received a written request for documentation and promptly responded.  A copy of her attorney's letter is annexed hereto as Exhibit A.

4.      Attached hereto as Exhibit B is a complete set of all documentation which was sent to Gazes LLC, the attorneys for Ms. Schaper, with my client's cover letter, setting forth the list of documents enclosed..

5.      These documents contain a full accounting for all monies due and owing and are fully documented.

6.      Supplementing these documents, annexed hereto as Exhibit C is a copy of the subsequent lease, as documentation to the difference in rent due each month based on the lower monthly rent, as contained in the new lease.

7.      These are "good guy" guarantees that would not have been operative and would have terminated when debtor surrendered possession.  Debtor elexsted not to peacefully surrender possession and instead had to be evicted by a City Marshall.  A copy of the City Marshall's eviction notice is annexed to Exhibit B.

8.      Debtors continue to remain liable on their "good guy" guaranty by failing to surrender possession voluntarily.  Instead, they simply occupied the retail space without paying rent.

        Wherefore, it is respectfully requested that Debtor's objections to claims be denied and that 109's claim be deemed valid in full.

Dated:  New York, New York
        ~~October~~ 9, 2010
        Novem ber

_____

Robert L. Lewis (RLL8873)

TO:

Wayne Greenwald, P.C.
475 Park Avenue South – 26th Floor
New York, N.Y. 10016

Brian Masumoto, Esq.
Office of the United States Trustee
33 Whitehall Street – 21st Floor
New York, N.Y. 10004



GAZES LLC
ATTORNEYS AT LAW

MAIN TEL: (212) 765-8000
FACSIMILE: (212) 765-9675
WRITER'S EMAIL:
jjarushewsky@gazesllc.com

October 5, 2010

Robert L. Lewis, Esq.
7 Penn Plaza, Suite 1602
New York, NY 10001

> Re:    In re Maya Schaper
> Case No. 09-16116 jmp
> <u>Proof of Claim filed by 109 West 69th Street, LLC</u>

Dear Mr. Lewis:

As you may know, Gazes LLC represents Ian J. Gazes, the chapter 7 trustee (the "Trustee") of the estate of Maya Schaper (the "Debtor").

In the Schaper chapter 7 case, you filed an unsecured claim on behalf of 109 West 69th Street, LLC (the "Creditor") in the amount of $131,928.35.

In addition to the documents attached to your proof of claim, please provide the Trustee with all the documents supporting your claim including without limitation evidence that the commercial unit had been subsequently re-leased and the amounts of rent subsequently obtained by the Creditor.

Please feel free to call the undersigned if you have any questions or comments.

Thank you in advance for your cooperation.

GAZES LLC

By: _____
Jayson Jarushewsky

# NICHOLAS E. BRUSCO
ATTORNEY AT LAW
165 WEST 74TH STREET
NEW YORK, NY 10023
———

*Lydia E. Rivera*
*Paralegal*

(212) 799-3205

November 4, 2010

Robert L. Lewis
7 Penn Plaza, Suite 1602
New York, N.Y. 10001

> Re:   106 West 69th Street, LLC  v.
> Smile Operating LLC, et al
> L&T Index No. 82361 / 2009
> <u>106 West 69th Street, New York, New York</u>

Dear Mr. Lewis,

Pursuant to your request enclosed please find 3 sets of each of the following documents pertaining to the above-captioned nonpayment summary proceeding:

1. Lease, dated as of May 1, 2008;
2. Notice of Petition and Petition dated August 26, 2009;
3. Affidavit of Service of Notice of Petition and Petition, sworn to September 1, 2009;
4. Letter dated October 19, 2009 from Rothkrug Rothkrug & Spector LLC to Nicholas E. Brusco;
5. Letter dated October 23, 2009 from Nicholas E. Brusco to Rothkrug Rothkrug & Spector LLC;
6. Marshal's Notice of Legal Possession, dated November 10, 2009; and
7. Landlord's accounting of all arrears due and owing.

Should you need any further information, please advise.

Sincerely,

NEB / ler
Enc.

7/04

## STANDARD FORM OF STORE LEASE
### The Real Estate Board of New York, Inc.

𝔄greement of 𝔏ease, made as of ~~the~~ the 1st day of May in the year 2008 , between
**106 West 69th Street, LLC with offices at 163 West 74th Street, New York, NY 10023**
party of the first part, hereinafter referred to as OWNER, and

**Smile Operating, LLC**
**106 West 69th Street, New York, NY 10023** party of the second part, hereinafter referred to as TENANT,

𝔚itnesseth: Owner hereby leases to Tenant and Tenant hereby hires from Owner
**ground floor retail store space consisting of approximately 500 square feet and the basement space located beneath it**
in the building known as       **106 West 69th Street**
in the Borough of      **Manhattan**      , City of New York, for the term of      **ten years**

(or until such term shall sooner cease and expire as hereinafter provided) to commence on the
**1st** day of **May** in the year **2008** , and to end on the
**30th** day of **April** in the year **2018** , and
both dates inclusive, at the annual rental rate of   **$134,400.00 escalating to $175,362.00 pursuant to Schedule A annexed hereto and made a part hereof,**

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any setoff or deduction whatsoever, except that Tenant shall pay the first        monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributes, executors, administrators, legal representative, successors and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.
**Occupancy:** 2. Tenant shall use and occupy the demised premises ~~for~~ **as a restaurant and for the sale of cheese, sandwiches, antiques and art,**
and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof, and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner, and Tenant agrees to carry, and will cause Tenant's contractors and sub-contractors to carry, such worker's compensation, commercial general liability, personal and property damage insurance as Owner may require. If an mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter, at Tenant's expense, by payment or filing a bond as permitted by law. All fixtures and all paneling, partitions, railings and like installations, installed in the demised premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the demised premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to, or to prevent Tenant's removal of, trade fixtures, moveable office furniture and equipment, but upon removal of same from the demised premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the demised premises to the condition existing prior to any such installations, and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the demised premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the demised premises by Owner at Tenant's expense.

**Repairs:** 4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance, shall cause the same to be operated in a good and workmanlike manner, shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of the lease, take good care of the demised premises (including, without limitation, the storefront) and

the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others, making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building, including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall be not entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty, which are dealt with in Article 9 hereof.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violations, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the demised premises, if the demised premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building, if arising out of Tenant's use or manner of use of the demised premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner, or

which shall or might subject Owner to any liability or responsibility to any person, or for property damage. Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article. If the fire insurance rate shall, at the beginning of the lease, or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or the demised premises issued by a body making fire insurance rates applicable to said demised premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate than applicable to said demised premises.

**Sub-ordination:**     7.   This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which the demised premises are a part, and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

**Tenant's Liability Insurance Property Loss, Damage, Indemnity:**     8.   Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of, or damage to, any property by theft or other wise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building, or caused by operations in construction of any private, public or quasi public work. Tenant agrees, at Tenant's sole cost and expense, to maintain commercial general liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession of the demised premises and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner. Such policy or policies shall be delivered to the Owner. On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefore, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefore. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys' fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agent, contractors, employees, invitees, or licensees, of any covenant on condition of this lease or by the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire, and Other Casualty:**     9.   (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner, and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the demised premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the demised premises shall have been repaired and restored by Owner (or sooner reoccupied in part by Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the demised premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the demised premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other

casualty. Notwithstanding anything contained to the contrary in subdivisions (a) through (e) hereof, including Owner's obligation to restore under subparagraph (b) above, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible, and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b), (d) and (e) above, against the other, or any one claiming through or under each of them by way of subrogation or otherwise. The release and waiver herein referred to shall be deemed to include any loss or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise located therein. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant, and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:**     10.   If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding, and Tenant shall have no claim for the value of any unexpired term of said lease. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixtures and equipment at the end of the term, and provided further such claim does not reduce Owner's award.

**Assignment, Mortgage, Etc.:**     11.   Tenant, for itself, its heirs, distributes, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate tenant or the majority interest in any partnership or other legal entity which is tenant shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any way be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:**     12.   Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation, and Tenant may not use any electrical equipment which, in Owner's opinion, reasonable exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no way make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to Premises:**     13.   Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the demised premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes, ducts, and conduits therein, provided they are concealed within the walls, floors or ceiling, wherever practicable. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction, nor shall the Tenant be entitled to any abatement of rent while such work is in progress, nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants and, may, during said six months period, place upon the demised premises the usual notice "to Let" and "For Sale", which notices Tenant shall permit to remain thereon without molestation. If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible, by master key or forcibly, and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render owner or its agents liable therefore, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of the term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation, and such act shall have no effect on this lease or Tenant's obligations hereunder. Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefore, to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other

public parts of the building, and to change the name, number or designation by which the building may be known.

**Vault,**
**Vault Space,**
**Area:**

**14.** No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building, is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability, nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault area shall be paid by Tenant.

**Occupancy:**

**15.** Tenant will not at any time use or occupy the demised premises in violation of Articles 2 or 37 hereof, or of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the demised premises and accepts them "as-is", subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the demised premises, and Tenant agrees to accept the same subject to violations, whether or not of record.

**Bankruptcy:**

**16.** (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant (or a guarantor of any of Tenant's obligations under this lease) as the debtor; or (2) the making by Tenant (or a guarantor of any of Tenant's obligations under this lease) of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the demised premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant, as and for liquidated damages, an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If the demised premises, or any part thereof, be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the demised premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages, by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:**

**17.** (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property, whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title 11 of the U.S. Code (Bankruptcy Code); or if Tenant shall have failed, after five (5) days written notice, to redeposit with Owner any portion of the security deposit hereunder which Owner has applied to the payment of any rent and additional rent due and payable hereunder, or if Tenant shall be in default with respect to any other lease between Owner and tenant ~~███████████████████████~~

~~███████████████████████████████████████~~
~~███████████████████████~~; then, in any one or more of such events, upon Owner serving a written fifteen (15) day notice upon Tenant specifying the nature of said default, and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall have not diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written five (5) days notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner, but Tenant shall remain liable as hereinafter provided.

(2) If notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein, or any item of additional rent herein mentioned, or any part of either, or in making any other payment herein required; then, and in any of such events, Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of the demised premises, and remove their effects and hold the demised premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of**
**Owner and**
**Waiver of**
**Redemption:**

**18.** In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the demised premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner, as liquidated damages, for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the demised premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorney's fees, brokerage, advertising and for keeping the demised premises in good order, or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgment, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable, in any way whatsoever, for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and**
**Expenses:**

**19.** If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under, or by virtue of, any of the terms or provisions in any article of this lease, after notice if required, and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately, or at any time thereafter, and without notice, perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any actions or proceeding, and prevails in any such action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefore, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Repre-**
**sentations**
**by Owner:**

**20.** Neither Owner nor Owner's agent have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the demised premises, except as herein expressly set forth, and no rights, easements or licenses are acquired by Tenant by implication or otherwise, except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as-is", and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant, and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of**
**Term:**

**21.** Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, "broom-clean", in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday, unless it be a legal holiday, in which case it shall expire at noon on the preceding business day.

**Quiet**
**Enjoyment:**

**22.** Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:**
23. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the demised premises are located in a building being constructed, because such building has not been sufficiently completed to make the demised premises ready for occupancy, or because of the fact that a certificate of occupancy has not been procured, or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any way to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in the condition required by this lease. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except the obligation to pay the fixed annual rent set forth in page one of this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:**
24. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach, and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed in acceptance of a surrender of the demised premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of the demised premises prior to the termination of the lease, and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the demised premises.

**Waiver of Trial by Jury:**
25. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of, or in any way connected with, this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of the demised premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commence any proceeding or action for possession, including a summary proceeding for possession of the demised premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding, including a counterclaim under Article 4, except for statutory mandatory counterclaims.

**Inability to Perform:**
26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no way be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease, or to supply, or is delayed in supplying, any service expressly or impliedly to be supplied, or is unable to make, or is delayed in making, any repair, additions, alterations or decorations, or is unable to supply, or is delayed in supplying, any equipment, fixtures or other materials, if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption or restrictions, or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency, or by reason of the conditions of which have been or are affected, either directly or indirectly, by war or other emergency, or when, in the judgment of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:**
27. Except as otherwise in this lease provided, any notice, statement, demand or other communication required or permitted to be given, rendered or made by either party to the other, pursuant to this lease or pursuant to any applicable law or requirement of public authority, shall be in writing (whether or not so stated elsewhere in this lease) and shall be deemed to have been properly given, rendered or made, if sent by registered or certified mail ~~~~~~~~~ or by courier guaranteeing overnight delivery and furnishing a receipt in evidence thereof, addressed to the other party at the address hereinabove set forth (except that after the date specified as the commencement of the term of this lease, Tenant's address, unless Tenant shall give notice to the contrary, shall be the building), and shall be deemed to have been given, rendered or made (a) on the date delivered, if delivered to Tenant personally, (b) on the date delivered, if delivered by overnight courier or (c) on the date which is two (2) days after being mailed. Either party may, by notice as aforesaid, designate a different address or addresses for notices, statements, demand or other communications intended for it. Notices given by Owner's managing agent shall be deemed a valid notice if addressed and set in accordance with the provisions of this Article. At Owner's option, notices and bills to Tenant may be sent by hand delivery.

**Water Charges:**
28. If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof, and throughout the duration of the Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter, as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. If the building or the demised premises, or any part thereof, be supplied with water through a meter through which water is also supplied to other premises, Tenant shall pay to Owner as additional rent, on the first day of each month.

☞_____ % ($_____)

of the total meter charges, as Tenant's portion. Independently of, and in addition to, any of the remedies reserved to Owner hereunder or elsewhere in this lease, Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:**
29. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office, or any bureau, department or official of the federal, state or city government, require or recommend that the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company, Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required, whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of $_____ on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Elevators, Heat, Cleaning:**
30. As long as Tenant is not in default under any of the covenants of this lease beyond the applicable grace period provided in this lease for the curing of such defaults, Owner shall, if and insofar as existing facilities permit, furnish heat to the demised premises, when and as required by law, on business days from 8:00 a.m. to 6:00 p.m. and on Saturdays from 8:00 a.m. to 1:00 pm. Tenant shall at Tenant's expense, keep the demised premises clean and in order, to the satisfaction of Owner, and if the demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, keep said sidewalks and curbs free from snow, ice, dirt and rubbish and maintain said sidewalks in a reasonably safe condition in compliance with requirements of law. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due and payable when rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building.

**Security:**
31. Tenant has deposited with Owner the sum of $ **30,000** as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may sue, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent, or any other sum as to which Tenant is in default, or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the reletting of the demised premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the case of every such use, application or retention, Tenant shall, within five (5) days after demand, pay to Owner the sum so used, applied or retained which shall be added to the security deposit so that the same shall be replenished to its former amount. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security, and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

☞   Space to be filled in or deleted

**Captions:**  **32.** The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:**  **33.** The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales or conveyance, assignment or transfer of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, grantee, assignee or transferee at any such sale, or the said lessee of the building, or of the land and building, that the purchaser, grantee, assignee or transferee at any such sale, or the said lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonable delayed.

**Adjacent Excavation-Shoring:**  **34.** If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, a license to enter upon the demised premises for the purpose of doing such work, as said person shall deem necessary, to preserve the wall or the building of which the demised premises form a part from injury or damage and to support the same by proper foundations, without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:**  **35.** Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing, upon Owner, within fifteen (15) days after giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules or Regulations or terms, covenants or conditions in any other lease, as against any other tenant, and Owner shall

not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass:**  **36.** Owner shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefore shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

**Pornographic Uses Prohibited:**  **37.** Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the demised premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the demised premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the demised premises, nor permit use of the demised premises for nude modeling, rap sessions, or as a so called rubber goods shop, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the demised premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal, or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined here as it is in Penal Law §235.00.

**Estoppel Certificate:**  **38.** Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, stating whether or not there exists any defaults by owner under this lease, and, if so, specifying each such default and such other information as shall be required of Tenant.

**Successors and Assigns:**  **39.** The covenants, conditions and agreements contained in this lease shall bind and enure to the benefit of Owner and Tenant and their respective heirs, distributes, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under, or with respect to, this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

**SEE RIDER ANNEXED HERETO AND MADE A PART HEREOF.**

𝕴𝖓 𝖂𝖎𝖙𝖓𝖊𝖘𝖘 𝖂𝖍𝖊𝖗𝖊𝖔𝖋, Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

**106 West 69th Street, LLC**

Witness for Owner:

by: Joseph O. Brusco, Member

Witness for Tenant:

**Smile Operating, LLC**

by: Gary B. Schaeffer, Member

### ACKNOWLEDGEMENT

**STATE OF NEW YORK,**

SS.:

**COUNTY OF** Nassau

On the 9th day of June in the year 2008 before me, the undersigned, a Notary Public in and for said State, personally appeared Gary B. Schaeffer , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Douglas M. Spector
Notary Public · State of New York
No. 02SP4843945
Qualified in Nassau County
Commission Expires January 31, 20 10

NOTARY PUBLIC

**Schedule A**
**Attached to and Forming Part of the Store Lease**
**dated as of May ⁄    , 2008 between**
**106 West 69th Street, LLC, Landlord, and**
**Smile Operating, LLC, Tenant, for lease of**
**ground floor retail store space and**
**basement space beneath**
**in the building known as**
**106 West 69th Street**
**New York, New York  10023**

| PERIOD | MONTHLY RENT | ANNUAL RENT |
|---|---|---|
| May 1, 2008 - April 30, 2009 | $11,200.00 | $134,400.00 |
| May 1, 2009 - April 30, 2010 | $11,536.00 | $138,432.00 |
| May 1, 2010 - April 30, 2011 | $11,882.08 | $142,584.96 |
| May 1, 2011 - April 30, 2012 | $12,238.55 | $146,862.60 |
| May 1, 2012 - April 30, 2013 | $12,605.71 | $151,268.52 |
| May 1, 2013 – April 30, 2014 | $12,983.89 | $155,806.68 |
| May 1, 2014 – April 30, 2015 | $13,373.41 | $160,480.92 |
| May 1, 2015 – April 30, 2016 | $13,774.62 | $165,295.44 |
| May 1, 2016 – April 30, 2017 | $14,187.86 | $170,254.32 |
| May 1, 2017 – April 30, 2018 | $14,613.50 | $175,362.00 |

OWNER AND LANDLORD

106 West 69th Street, LLC

by: _____
Joseph O. Brusco
Member

TENANT

Smile Operating, LLC

by: _____
Gary B. Schaeffer
Member

**Rider**
**Attached to and Forming Part of the Store Lease**
**dated as of May   /   , 2008 between**
**106 West 69th Street, LLC, Landlord, and**
**Smile Operating, LLC, Tenant, for lease of**
**ground floor retail store space and**
**basement space beneath**
**in the building known as**
**106 West 69th Street**
**New York, New York  10023**

40.   **CONSTRUCTION OF THIS RIDER WITH RESPECT TO PRINTED LEASE.**  If any provision of this Rider shall be in conflict with any printed provision of this Lease, the provision of this Rider shall control.

41.   **ADDITIONAL RENT.**  Whenever the terms of this lease require Tenant to pay any sums to Landlord, such sums shall be due as rent and / or additional rent and Landlord shall have the same rights to recover additional rent as exist for the recovery of rent.

42.   **REAL ESTATE TAXES.**  In addition to the base rent provided, the Tenant will pay the Landlord as additional rent twelve (12%) percent of any increase in the real estate taxes or of any assessment taxes levied against the premises known as 106 West 69th Street, New York, New York (Block 1140, Lot 133).  The base year upon which additional rent shall be calculated under this paragraph will be the fiscal tax year commencing July 1, 2008 to June 30, 2009.  Additional rent under this paragraph will be calculated by subtracting the base year real estate taxes from those real estate taxes actually payable in the following years of this lease term and then multiplying the result by 0.12.  Tenant shall then pay the additional rent due within twenty (20) days of demand.  Demand hereunder may be made by regular first class mail.  Failure of the Landlord to enforce this provision for any year(s) does not constitute a forfeiture or waiver of his rights as to additional rent for that year or any subsequent year(s).

43.   **BROKERS.**  Tenant covenants, warrants and represents that there were no brokers instrumental in consummating this Lease.  Tenant covenants, warrants and represents that no conversations or negotiations were had with any broker concerning the renting of the demised premises.  Tenant agrees to indemnify, defend and hold Landlord harmless from and against any claims for a brokerage commission arising out of any conversation or negotiations had by Tenant with any other broker with respect to the demised premises.

44.   **TENANT INSURANCE.**  Tenant covenants to provide on or before the commencement date of the term hereof and to maintain at all times comprehensive public liability insurance and property damage insurance protecting Landlord and Tenant against any liability whatsoever occasioned by accident or injury on or about the demised premises or any appurtenances thereto.  Such policies are to be written by good and solvent insurance companies to the reasonable satisfaction of the Landlord and the limits of liability under public liability insurance shall not be less than the amount of one million dollars ($1,000,000.00) in respect of any accident, and in the amount of three hundred thousand dollars ($300,000.00) in respect of property damages to Landlord's property.  Tenant shall have the Landlord named as co-insured or additional insured and shall deliver an original of said insurance policy or certificate thereof to Landlord on or before the commencement date of this Lease along with proof of payment of the premium for the insurance.  Prior to the time the above insurance coverages are first required to be carried by Tenant and thereafter, at

- 1 -

least fifteen (15) days prior to the expiration of any such policy, Tenant agree to deliver to Landlord either a duplicate original of the aforesaid policies, or a certificate evidencing that such insurance may not be cancelled except upon thirty (30) days notice to Landlord. Tenant's failure to provide and keep in force the aforementioned insurance shall be regarded as a material default hereunder, entitling Landlord to exercise any or all of the remedies as provided herein in the event of Tenant's default.

45.    **SIGNAGE.** Tenant may not install any sign(s) or lighting on the exterior of the demised premises without the prior written consent of Landlord. Tenant shall submit a plan(s) of any proposed signs to Landlord for consent. With regard to all signage, Tenant shall obtain all necessary permits and pay fees for same to the governmental agencies having jurisdiction, including but not limited to, illuminated sign fees and permits. Tenant shall maintain any signs in good condition and promptly pay any annual permit or licensing fee to the proper governmental agencies for the right to maintain the signs. It is the parties' intention that signs and lettering be in a presentable manner in keeping with the character of the building and the neighborhood, and in accordance with the regulations of this Lease. Tenant acknowledges that the subject building is located within an Historic Landmark District as designated by The Landmark Preservation Commission ("LPC"), and that any sign or change to the exterior of the building must be approved by the LPC pursuant to appropriate application by Tenant.

46.    **UTILITIES.** The demised premises shall contain separate meters to measure Tenant's consumption of gas, electric, water and sewer services used by Tenant in conjunction with operation of Tenant's business, including the cellar area, if any. In the event the demised premises do not currently contain said separate meters Tenant shall immediately install same at its sole cost and expense, in default of which Landlord may install same and bill the cost of such installation(s) to Tenant as additional rent. All water and sewer bills are to be sent directly from the Department of Environmental Protection or successor agency to the Landlord. Tenant shall pay amounts billed by Landlord, as additional rent within seven (7) days of presentation of the bill by check made payable to the Landlord. Landlord will send its own check to the applicable billing authority. Landlord will provide Tenant on request with copies of water and sewer bills from the billing authority. Tenant shall purchase its electricity directly from the public utility. Presentation of a bill under this paragraph may be made by ordinary first class mail.

47.    **GLASS.** Tenant shall be completely liable for, and shall, at its own cost and expense, immediately repair and replace all broken plate or other glass in the demised premises. If Tenant fails to repair such glass within ten (10) days of the damaging event, Landlord may replace same and charge the cost of same to Tenant as additional rent.

48.    **HOT WATER.** Tenant shall install and maintain, at its own cost and expense, equipment for the heating of water for its use in the demised premises. Tenant shall pay the cost of the fuel consumed in heating hot water for Tenant's use.

49.    **CLEANING OF SEWER LINES.** Tenant shall be responsible for any cost of cleaning out the building sewer lines caused by waste generated by Tenant. Tenant shall be responsible for any surcharge levied by the applicable government agency for the cost of removing this Tenant's wastes from the municipal sewer system.

50.    **TRASH RECEPTACLES.** All receptacles for garbage, refuse and debris must be stored inside the demised premises and put out for pick up only at the reasonable direction of the Landlord and in accordance with all applicable laws and in such manner so as not to interfere with the comfort and quiet enjoyment of others. Tenant shall be liable for and shall pay for all summonses or violations issued or fines levied as a result of improper disposal of Tenant's garbage, refuse and / or debris.

51. **CONDITION OF PREMISES.** Tenant shall keep the demised premises in good repair and free from violations. Tenant shall contract with a private sanitation company to remove its garbage from the demised premises. Tenant shall be liable for any summonses or violations issued including any fines and / or penalties, as a result of the presence of Tenant's garbage, refuse or debris on the sidewalk in front of (or adjacent to) the demised premises, or in the street in front of (or adjacent to) the demised premises up to a distance of eighteen (18") inches from the curb. In the event that at some future time the City of New York or its municipal agencies increase the distance from the curb for which the owner of real property is responsible to maintain the street free of debris, then, in that event, this paragraph of these riders shall be deemed to be amended so as to reflect Tenant's responsibility for any summons or violation issued for presence of garbage, refuse or debris in that increased area. Tenant takes the demised premises in "as is" condition.

52. **NO WAIVER.** Failure of Landlord to send notice shall not constitute a waiver of any right, including but not limited to, the right to collect any rent or rent increase provided for in this Lease, and Landlord shall retain the right to notify Tenant of any right(s) of whatever nature and Tenant shall comply with same when notified.

53. **LATE CHARGES.** In the event that any rent, additional rent or any other sum is not paid within five (5) days of its accrual, Tenant shall pay a late charge equal to five percent (5%) of the sum due to cover or defray the expense incident to handling such delinquent payment(s). Such late charges will accrue automatically, without further notice to Tenant, and shall be paid by Tenant as additional rent.

54. **PEST CONTROL.** Tenant shall maintain the demised premises free of vermin. In the event that Tenant does not maintain same to the reasonable satisfaction of Landlord, Landlord may cause same to be exterminated and bill the cost of same to Tenant as additional rent.

55. **SOUNDPROOFING OF CEILING AND DISRUPTION OF RESIDENTIAL USES.** Tenant understands that there are residential Tenants directly above the demised premises and that noise / music, fumes, vapors or odors may disturb them. If Landlord receives complaints of any such condition from Tenants of 106 West 69th Street, New York, New York or any neighboring Tenant, then Tenant must cure the problem, the failure of which will be treated as a breach of a substantial obligation of the Tenant under this lease.

56. **LANDLORD REPRESENTATION.** Landlord makes no representation, warranty or covenant except as explicitly and expressly set forth in this Lease. Landlord does not represent, covenant or warrant that any Government license or permit which may be required for the business of Tenant to be carried on in the premises will be granted, or if granted, will be continued in effect or renewed. Tenant's obligations under this Lease shall in no way be affected or impaired by Tenant's inability to secure/maintain same.

57. **HEATING AND AIR CONDITIONING.** Tenant covenants and agrees, at its own cost and expense, to furnish and supply unto itself all heating and air conditioning necessary to heat and / or air conditioning the premises. Notwithstanding, Tenant may utilize existing radiator(s) located in the demised premises which is (are) connected into the building's central heating system and Landlord will maintain said central heating system operative during the hours required for the residential tenants above the demised premises. The Landlord's consent with respect to such radiator(s) may not be interpreted as an assumption of any obligation to provide heat to the demised premises, and any failure of the building's central heating system to supply heat to the demised premises cannot and will not be used as a defense to the payment of rent.

- 3 -

58.   **SNOW REMOVAL**.  Tenant shall be responsible for removal of snow, ice and / or debris from the sidewalks in front of the demised premises.  Tenant agrees to be liable for any summons or violation issued as a result of the presence of snow, ice or debris on said sidewalks.  Tenant agrees to assume liability for and indemnify Landlord in the event of any lawsuit based on personal injury or property damage to any person as a result of a snow, ice or debris condition on said sidewalks.  Tenant shall notify Landlord in writing of any claim(s) made by any person allegedly injured in or about the demised premises.

59.   **VAULTS**.  Tenant will pay Landlord as additional rent the annual vault charges for the subject building within 10 days of demand by Landlord.  Demand hereunder may be made by regular first class mail.

60.   **DISPLAYS**.  No inventory, supplies, stock, merchandise or any other items are to be stored, kept, or displayed other than inside the demised premises.  Tenant shall not use any radio, loud speaker, phonograph or other instrument in or from the demised premises, where the noise from which will reach outside the demised premises.

61.   **LIABILITY FOR ATTORNEYS' FEES**.  If Landlord is compelled to institute, prosecute, and / or defend any legal action or proceeding by reason of any default of Tenant hereunder, Tenant shall be liable for Landlord's reasonable attorneys' fees, costs and damages arising therefrom.  Such fees, if incurred by Landlord shall be deemed to be additional rent hereunder and shall be due from Tenant to Landlord on the first day of the month following the incurring of such respective expenses.

62.   **LANDLORD'S RIGHT TO ACCESS BUILDING ELEMENTS LOCATED WITHIN THE DEMISED PREMISES**.  Tenant acknowledges that essential building elements are accessible only through the demised premises and that Landlord will have to access those areas as necessary from time to time.  Accordingly, Landlord may access the demised premises to service any building system.

63.   **TENANT'S LIABILITY**.  Tenant shall pay all amounts of additional rent, including but not limited to water charges, which are due or may become due under Tenant's predecessor's lease for the same demised premises.

64.   **TENANT'S OBLIGATION FOR COMPLIANCE WITH THE AMERICANS WITH DISABILITIES ACT**.  Upon the commencement of this lease and at all times during the term of this lease Tenant shall, at its sole cost and expense, comply with the Americans With Disabilities Act ("ADA").  In the event any claim or suit is brought against the Tenant by any person(s), entity, group or governmental body or subdivision for alleged violation of the ADA, Tenant will immediately comply with ADA and / or defend such claim or suit.  In the event that Landlord is named as a defendant in any such suit, or if any claim is made against Landlord for any alleged violation of the ADA regarding the demised premises, Tenant shall hold Landlord harmless for any costs and expenses incurred by Landlord in defense of such suit or claim, including but not limited the value of reasonable attorneys' services engaged with regard to same.

65.   **TERMINATION OF LEASE AND HOLDOVER USE AND OCCUPANCY**.  The date on which Tenant's obligation to quit and surrender possession of the leased premises to Landlord, ("Termination Date"), shall be the earlier of (i) the date set forth as the ending date on the face of this lease; or (ii) the date which this lease may terminate by its terms for such reasons including but not limited to default, repudiation, cancellation, or rescission.  If Tenant does not surrender possession of the premises on or before the Termination Date, Tenant shall be liable to the Landlord in the amount of the higher of (i) two times the then fair

Guaranty
Attached to and Forming Part of the Store Lease
dated as of May   *l*   , 2008 between
106 West 69th Street, LLC, Landlord, and
Smile Operating, LLC, Tenant, for lease of
ground floor retail store space and
basement space beneath
in the building known as
106 West 69th Street
New York, New York  10023
(hereinafter referred to as the "Lease")

FOR VALUE RECEIVED, and in consideration for, and as an inducement to, **106 West 69th Street, LLC**, as Landlord, for entering into and making the lease dated as of May   *l*   , 2008, with **Smile Operating, LLC**, as Tenant, for the premises located at 106 West 69th Street, ground floor retail store space and basement space beneath, New York, N.Y., (the "Lease") the undersigned(s) hereby guarantee to Landlord, Landlord's successors and / or assigns all of Tenant's duties, covenants and obligations, pursuant to the Lease without limitation and the undersigned(s) expressly agree that the guaranty hereunder shall in no way be terminated, affected or impaired by reason of any assertion of non-assertion by Landlord of any of its rights pursuant to any provision of the within Lease.  The undersigned(s) further covenant and agree that this guaranty shall remain and continue in full force and effect as to any renewal, modification or extension of the Lease.  As a further inducement to Landlord to make this Lease and in consideration thereof, Landlord and the undersigned(s) covenant and agree that in any action or proceeding brought by either Landlord or the undersigned(s) against the other on any matter whatsoever arising out of, under, or by virtue of the terms of the Lease, or of this guaranty, that Landlord and the undersigned(s) shall and do hereby waive trial by jury.

This guaranty shall not extend to any obligations incurred by Tenant under the Lease after the date the Tenant and anyone claiming through Tenant vacate and surrender the demised premises to the Landlord (the "Surrender Date"); provided that: (i) Tenant shall not be in default of any provision of the Lease;  (ii) Tenant give not less than one hundred twenty (120) days prior written notice by certified mail to Landlord of its intent to vacate the demised premises together with the Surrender Date; and (iii)  Tenant delivers exclusive and actual possession of the demised premises to the Landlord free of  all subtenants, occupants, licensees and/or undertenants on or before the Surrender Date and otherwise in accordance with the Lease.  Guarantors' liability will be limited to liabilities accrued up through and including the Surrender Date, provided the Tenant has complied with and satisfied all the terms and conditions set forth above.

Dated: June  *9*  , 2008

Maya Schaper
Maya Schaper

Soc. Sec. # 309 . 32 . 4433

Gary B. Schaeffer
2025 Broadway, apt. 21H,J,K
New York, N.Y.  10023

Soc. Sec. # 010 – 40 - 0893

State of New York, County of _NASSAU_ )        ss:

On the _9th_ day of _JUNE_, 2008, before me, the undersigned, a Notary Public in and for said State, personally appeared    **Maya Schaper**   personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Douglas M. Spector
Notary Public • State of New York
No. 02SP4843945
Qualified in Nassau County
Commission Expires January 31, 20_10_


State of New York, County of _NASSAU_ )        ss:

On the _9th_ day of _JUNE_, 2008, before me, the undersigned, a Notary Public in and for said State, personally appeared    **Gary B. Schaeffer**   personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Douglas M. Spector
Notary Public • State of New York
No. 02SP4843945
Qualified in Nassau County
Commission Expires January 31, 20_10_

## GUARANTY

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the agreements to be performed and observed by Tenant in the attached lease, including the "Rules and Regulations" as therein provided, without requiring any notice to Guarantor of nonpayment, or nonperformance, or proof, or notice of demand, to hold the undersigned responsible under this guaranty, all of which the undersigned hereby expressly waives, and expressly agrees that the legality of this agreement and the agreements of the Guarantor under this agreement, shall not be ended, or changed by reason of the claims to Owner against Tenant of any of the rights or remedies given to Owner as agreed in the attached lease. The Guarantor further agrees that this guaranty shall remain and continue in full force and effect as to any renewal, change or extension of the lease. As a further inducement to Owner to make the lease, Owner and Guarantor agree that in any action or proceeding brought by either Owner or the Guarantor against the other on any matters concerning the lease or of this guaranty, that Owner and the undersigned shall and do waive trial by jury.

Dated: . . . . . . . . . . . . . . . . . . . . . . . . in the year . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Guarantor

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Witness

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Guarantor's Residence

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Business Address

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Firm Name

STATE OF NEW YORK        )
                                              )  ss.:
COUNTY OF                     )

On the . . . . . . . day of . . . . . . . . in the year . . . . . .
before me, the undersigned, a Notary Public in and for said State, personally appeared
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                                                                          Notary

 **IMPORTANT – PLEASE READ**

### RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

1.    The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public hall of the building, either by any tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

2.    If the demised premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premises clean and free from ice, snow, etc.

3.    The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed.

4.    Tenant shall not use, keep or permit to be used or kept, any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors and/or vibrations, or interfere in any way with other tenants or those having business therein.

5.    No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or fixed by Tenant on any part of the outside of the demised premises or the building, or on the inside of the demised premises if the same is visible from the outside of the demised premises, without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the demised premises. In the event of the violation of the foregoing by Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant. Signs on interior doors and directory tablet shall be inscribed, painted or affixed for Tenant by Owner at the expense of Tenant, and shall be of a size, color and style acceptable to Owner.

6.    Tenant shall not mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct. Tenant shall not lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used, an interlining of builder's deadening felt shall

be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7.    Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the demised premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations or the lease of which these Rules and Regulations are a part.

8.    Owner reserves the right to exclude from the building between the hours of 6 P.M. and 8 A.M. and at all hours on Sundays and holidays all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom Tenant requests same in writing. Tenant shall be responsible for all persons for whom it requests such pass, and shall be liable to Owner for all acts of such person.

9.    ' Owner shall have the right to prohibit any advertising by Tenant which, in Owner's opinion, tends to impair the reputation of Owner or the building's desirability as a building for stores or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

10.    Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible, or explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors, to permeate in or emanate from the demised premises.

11.    Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which was designated to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant at Tenant's expense in such setting sufficient in Owner's judgment to absorb and prevent vibration, noise and annoyance.

12.    Refuse and Trash – Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash. Tenant shall pay all costs, expenses, fines, penalties or damages that may be imposed on Owner or Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 12, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any actions, claims and suits arising from such non-compliance, utilizing counsel reasonably satisfactory to Owner.

---

**STANDARD FORM OF**

**Store Lease**

The Real Estate Board of New York, Inc.
Copyright 2004.  All rights Reserved.
Reproduction in whole or in part prohibited.

Address

Premises

TO

in the year

Dated

Rent Per Year

Rent Per Month

Term
From
To

Drawn by

Checked by

Entered by

Approved by

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: Commercial Part 52
=====================================================X

| | |
|---|---|
| 106 West 69th Street, LLC, | Index No. L&T **82361** / 2009 |
|         Petitioner-Landlord, | |
|   -against- | **NOTICE OF PETITION** |
| | **NON-PAYMENT** |
| Smile Operating LLC, Maya Schaper and Gary B. Schaeffer: | **BUSINESS** |
| 106 West 69th Street | |
| New York, N.Y.  10023, | Petitioner's Business Address: |
| | 163 West 74th Street |
|         Respondent (s). | New York, N.Y.  10023 |

=====================================================X

To the respondent(s) above named and described, in possession of the premises hereinafter described or claiming possession thereof:

**PLEASE TAKE NOTICE** that the annexed petition of **106 West 69th Street, LLC** verified August **26**, 2009, prays for a final judgment of eviction, awarding to the petitioner possession of premises described as follows: ground floor retail store space consisting of approximately 500 square feet and the basement space located beneath it in the building known as 106 West 69th Street, New York, N.Y.  10023 County of New York, in the City of New York, as demanded in the petition.

**TAKE NOTICE** also that demand is made in the petition for judgment against you for the sum of **$24,802.40** with interest from August 1, 2009.

**TAKE NOTICE** also that **WITHIN FIVE DAYS** after service of this Notice of Petition upon you, you must answer, either orally before the Clerk of this Court at **111 Centre Street**, County of New York City and State of New York, or in writing by serving a copy thereof upon the undersigned attorney for the petitioner, and by filing the original of such answer, with proof of service thereof, in the Office of the Clerk.  Your answer may set forth any defense or counterclaim you may have against petitioner unless such defense or counterclaim is precluded by law or prior agreement of the parties.  On receipt of your answer, the Clerk will fix and give notice of the date for trial or hearing which will be held no less than 3 nor more than 8 days thereafter, at which you must appear.  If, after trial or hearing, judgment is rendered against you, the issuance of a warrant dispossessing you may, in the discretion of the Court, be stayed for FIVE days from the date of such judgment.

**TAKE NOTICE** also that if you fail to interpose and establish any defense that you may have to the allegations of the petition, you may be precluded from asserting such defense or the claim on which it is based in any other proceeding or action.  In the event you fail to answer and appear, final judgment by default will be entered against you but a warrant dispossessing you will not be issued until the tenth day following the date of the service of this Notice of Petition upon you.

**TAKE NOTICE** that under Section 745 of the Real Property Actions and Proceedings Law, you may be required by the Court to make a rent deposit, or a rent payment to the petitioner, upon your second request for an adjournment or if the proceeding is not settled or a final determination has not been made by the Court within 30 days of the first court appearance.  Failure to comply with initial rent deposit or payment order may result in the entry of a final judgment against you without a trial.  Failure to make subsequent required deposits or payments may result in an immediate trial on the issues raised in your answer.

Dated: August **26**, 2009

Nicholas E. Brusco
Attorney for Petitioner
165 West 74th Street
New York, N.Y.  10023
(212) 799-3205

**CHIEF CLERK**
AUG 2 6 2009
**NEW YORK COUNTY CIVIL COURT**

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK:  Commercial Part 52
==================================X

106 West 69th Street, LLC,                              :        Index No. L&T **8236/**  / 2009

            Petitioner-Landlord,                  :

            -against-                               :        **PETITION**
                                    :        **NON-PAYMENT**
Smile Operating LLC, Maya Schaper and            :        **BUSINESS**
Gary B. Schaeffer                                      :
106 West 69th Street                                   :
New York, N.Y.  10023                                  :
                                    :
            Respondent(s).                        :
==================================X

THE PETITION OF **106 West 69th Street, LLC,** respectfully shows, upon information and

belief, that:

      1.      Petitioner is a limited liability company organized and existing pursuant to the

laws of the State of New York.

      2.      Petitioner is the landlord of the premises herein, and is authorized to maintain this

proceeding.

      3.      The premises are described as follows:

            ground floor retail store space consisting of approximately
            500 square feet and the basement space located beneath it
            in the building known as
            106 West 69th Street
            New York, N.Y.  10023

and will hereinafter be referred to as the "Premises".

      4.      The Premises are within the jurisdiction of the Civil Court of the City of NY,

County of New York.

      5.      Respondent – Smile Operating LLC is the tenant of the premises pursuant to

written lease agreement dated May 1, 2008 between respondent and petitioner for the term

- 1 -

commencing May 1, 2008 and ending April 30, 2018 (hereinafter "Lease").  Respondents –

Maya Schaper and Gary B. Schaeffer are the individual guarantors of the Lease.

      6.      Pursuant to the Lease, respondent-tenant agreed to pay the landlord as rent

**$11,536.00** each month in advance on the first day of each month.  Pursuant to the Lease, there is

due to petitioner-landlord from respondent-tenant rent and additional rent as follows:  **See Notice**

**to Tenant with affidavit(s) annexed hereto and made a part hereof and incorporated herein**

**as if fully set forth.**

      7.      Respondent-tenant has defaulted in the payments thereof and the total rent in

arrears is **$24,802.40**.

      8.      Rent has been demanded by written notice to tenant since the same became due,

as shown in the annexed Notice to Tenant with affidavit(s) of service thereof.

      9.      Respondent(s) hold over and continue in possession of the Premises without

landlord's permission after said default.

      10.      The Premises are not subject to any rent regulatory laws as the Premises are

rented for business purposes.

      11.      Except for the Premises sought in this proceeding, and those set forth in the

annexed Notice to Tenant, petitioner lacks written information or notice of any address of the

respondent.

      12.      The Lease contains a provision whereby respondent-tenants agreed to pay the

landlord's attorney's fees in the event of a default by tenant in paying rent or additional rent,

pursuant to which petitioner seeks judgment for legal fees incurred herein in an amount to be

determined by the Court.

- 2 -

13.    The Premises are a multiple dwelling and pursuant to the N.Y.C. Administration Code there is a currently effective registration statement on file with the Office of Code Enforcement in which the owner has designated the managing agent named below, a natural person over 21 years of age, to be in control of and responsible for the maintenance of and operation of the dwelling.

| | |
|---|---|
| Multiple Dwelling Registration Number | 121665 |
| Registered Managing Agent | Julio Fernandez |
| Address | 163 West 74th Street |
| | New York, N.Y.  10023 |
| Telephone Number | (212) 595-9590 |

14.    Petitioner respectfully requests: a final judgment awarding possession of the Premises to petitioner; issuance of a warrant of eviction for the purpose of removing respondent(s) from possession thereof; and a money judgment in the amount of **$24,802.40** for rent past due as shown in the annexed Notice to Tenant and such further rent and additional rent which may accrue during the pendency of this proceeding and costs, disbursements and legal fees herein and such amounts as may be determined by the Court.

Dated:  New York, New York                                  106 West 69th Street, LLC
      August  **26** , 2009                                 Petitioner-Landlord


Nicholas E. Brusco
Attorney for Petitioner
165 West 74th Street
New York, N.Y.  10023
(212) 799-3205

- 3 -

## VERIFICATION

The undersigned attorney, duly admitted to practice before the courts of the State of New York hereby affirms under penalty of perjury that he is the attorney for Petitioner herein; that he has read the foregoing petition and knows the contents thereof; that the same are true to his own knowledge except as to matters stated to be upon information and belief; and as to those matters he believes them to be true. The grounds of his belief as to matters not stated upon his knowledge are statements and/or records provided by the petitioner, its agents and/or employees and contained in the file in the attorney's office. This verification is made pursuant to the provisions of RPAPL § 741.

Dated: New York, New York
      August **26**, 2009

Nicholas E. Brusco

- 4 -

# NOTICE TO TENANT

TO:         Smile Operating LLC                    Maya Schaper
            106 West 69th Street                    106 West 69th Street
            New York, N.Y.  10023                   New York, N.Y.  10023
            (Tenant)                                (Guarantor)

            Gary B. Schaeffer
            106 West 69th Street
            New York, N.Y.  10023
            (Guarantor)

PREMISES:   ground floor retail store space consisting of approximately 500 square feet
            and the basement space located beneath it
            in the building known as
            106 West 69th Street
            New York, N.Y.  10023

Tenant of the above premises:

   **PLEASE TAKE NOTICE** that you are justly indebted to the landlord of the above-

described premises in the total sum of $24,802.40, for rent and additional rent as follows:

|             | Rent        | Late Charges |
|-------------|-------------|--------------|
| June 2009   |             | $576.80      |
| July 2009   | $11,536.00  | $576.80      |
| August 2009 | $11,536.00  | $576.80      |

   **PLEASE TAKE FURTHER NOTICE**, that you must make payment on or before the

expiration of three (3) days from the date of service of this notice upon you, or surrender up the

possession of the premises, in default of which the landlord will commence proceedings against

you, and pursuant to your lease, you will be liable for the reasonable cost of attorneys' fees

incurred.

Dated:  New York, New York              106 West 69th Street, LLC
        August 10, 2009                 Landlord

                               by:      _____
                                        Joseph O. Brusco, Member
                                        (212) 595-9590

cc:    Gary B. Schaeffer
       2025 Broadway, apt. 21H,J,K
       New York, NY  10023

AFFIDAVIT OF CONSPICUOUS SERVICE

STATE OF NEW YORK  }                                          CASE: BRUSCO
COUNTY OF BRONX    }                                          INDEX#:

FREDDIE W. GATLIN, BEING DULY SWORN, DEPOSES AND SAYS: THAT DEPONENT IS NOT A PARTY TO
THIS PROCEEDING, IS A LICENSED PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDES AT BRONX ,
NEW YORK.

DEPONENT WAS UNABLE TO SERVE: SMILE OPERATING LLC, MAYA SCHAPER, GARY B. SCHAEFFER

TENANT(S)/ OCCUPANT(S) BY PERSONAL DELIVERY

AT  106 WEST 69TH STREET,                    NEW YORK,NY 10023

OTHER THAN THE PROPERTY SOUGHT TO BE RECOVERED, PETITIONER LACKS WRITTEN INFORMATION
OF ANY ADDRESS WHERE THE RESPONDENTS RESIDE, ARE EMPLOYED OR HAVE A PLACE OF BUSINESS.


ON   8/18/09  AT          12:15 PM        DEPONENT SERVED THE ATTACHED

                              RENT DEMAND

[X]   BY AFFIXING A TRUE COPY FOR EACH TENANT/OCCUPANT UPON A CONSPICUOUS
      PART, TO WIT-THE ENTRANCE DOOR OF SAID PROPERTY.

DEPONENT WAS UNABLE TO FIND A PERSON OF SUITABLE AGE AND DISCRETION WILLING TO RECEIVE
THE SAME AT THIS TIME OR DURING THE PRIOR ATTEMPT MADE ON 8/17/09  AT    2:32 PM.

AND ON 8/19/09 DEPONENT SERVED COPIES OF THE WITHIN   RENT DEMAND, ON EACH
TENANT/OCCUPANT, NOT PERSONALLY SERVED AT THE PROPERTY SOUGHT TO BE RECOVERED, BY
DEPOSITING A TRUE COPY FOR EACH NAMED TENANT/OCCUPANT OF THE SAME ENCLOSED IN A POST
PAID WRAPPER ADDRESSED TO EACH TENANT/ OCCUPANT AT THE PROPERTY SOUGHT TO BE
RECOVERED, IN THE POST OFFICE BY CERTIFIED MAIL AND BY REGULAR FIRST CLASS MAIL WITHIN
THE STATE OF NEW YORK.

AND ON 8/19/09 ADDTIONAL MAILINGS BY REGULAR AND CERTIFIED MAIL TO: GARY B. SCAEFFER AT,
2025 BROADWAY  APT 21H, J, K, NEW YOK  NY 10023


SWORN TO BEFORE ME ON 8/19/09

                                                      FREDDIE W. GATLIN
                                                      LIC.# 1096040

       ROSEMARY BEALS
NOTARY PUBLIC, STATE OF NEW YORK
        NO. 01BE4907242
    Qualified in New York County
Commission Expires on February 16, 2010



                                    C-1199

CIVIL              OF THE CITY OF NEW YORK
        COURT              NEW YORK                              2009
STATE OF NEW YORK, COUNTY OF              Index No. 82361 Year

106 West 69th Street, LLC,

                    Petitioner-Landlord,

        -against-

Smile Operating LLC, Maya Schaper and Gary B. Schaeffer
106 West 69th Street
New York, N.Y. 10023,

                    Respondent(s).

## NOTICE OF PETITION ◇ NON-PAYMENT ◇ BUSINESS

### NICHOLAS E. BRUSCO

*Attorney(s) for* ***Petitioner-Landlord***

*Office and Post Office Address, Telephone*

165 WEST 74TH STREET
NEW YORK, N.Y. 10023
212-799-3205

**Amount Claimed: $24,802.40**

To

Attorney(s) for

Signature (Rule 130-1.1-a)

_____

Print name beneath

Service of a copy of the within is hereby admitted.

Dated: _____

PLEASE TAKE NOTICE:

☐ NOTICE OF ENTRY

that the within is a *(certified) true copy of a*
duly entered in the office of the clerk of the within named court on

☐ NOTICE OF SETTLEMENT

that an order                                          of which the within is a true copy
will be presented for settlement to the HON.          one of the judges of the
within named Court, at
on                          at                  M.
Dated.

AFFIDAVIT OF CONSPICUOUS SERVICE

STATE OF NEW YORK  }
COUNTY OF BRONX    }

CASE: BRUSCO
INDEX#: 82361/09

 COPY

FREDDIE W. GATLIN, BEING DULY SWORN, DEPOSES AND SAYS:  THAT DEPONENT IS NOT A PARTY TO
THIS PROCEEDING, IS A LICENSED PROCESS SERVER OVER 18 YEARS OF AGE AND RESIDES AT BRONX ,
NEW YORK.

DEPONENT WAS UNABLE TO SERVE: SMILE OPERATING LLC., MAYA SCHAPER, GARY B. SCHAEFFER

TENANT(S)/ OCCUPANT(S) BY PERSONAL DELIVERY

AT  106 WEST 69TH STREET,                    NEW YORK,NY 10023

OTHER THAN THE PROPERTY SOUGHT TO BE RECOVERED, PETITIONER LACKS WRITTEN INFORMATION
OF ANY ADDRESS WHERE THE RESPONDENTS RESIDE, ARE EMPLOYED OR HAVE A PLACE OF BUSINESS.


ON  9/1/09  AT  2:30 PM        DEPONENT SERVED THE ATTACHED

                              NOTICE OF PETITION AND PETITION

[X]  BY AFFIXING A TRUE COPY FOR EACH TENANT/OCCUPANT UPON A CONSPICUOUS
     PART, TO WIT-THE ENTRANCE DOOR OF SAID PROPERTY.

DEPONENT WAS UNABLE TO FIND A PERSON OF SUITABLE AGE AND DISCRETION WILLING TO RECEIVE
THE SAME AT THIS TIME OR DURING THE PRIOR ATTEMPT MADE ON  8/31/09  AT   12:02 PM.

AND ON 9/1/09  DEPONENT SERVED COPIES OF THE WITHIN    NOTICE OF PETITION AND PETITION, ON
EACH TENANT/OCCUPANT, NOT PERSONALLY SERVED AT THE PROPERTY SOUGHT TO BE RECOVERED,
BY DEPOSITING A TRUE COPY FOR EACH NAMED TENANT/OCCUPANT OF THE SAME ENCLOSED IN A
POST PAID WRAPPER ADDRESSED TO EACH TENANT/ OCCUPANT AT THE PROPERTY SOUGHT TO BE
RECOVERED, IN THE POST  OFFICE BY CERTIFIED MAIL AND BY REGULAR FIRST CLASS MAIL WITHIN
THE STATE OF NEW YORK.

AND ON 9/1/09 ADDITIONAL MAILINGS BY REGULAR AND CERTIFIED MAIL TO: GARY B. SCHAEFFER AT,
2025 BROADWAY, APT 21H, J, K, NEW YORK  NY 10023


SWORN TO BEFORE ME ON 9/1/09

                                              FREDDIE W. GATLIN
                                              LIC.# 1096040


          ROSEMARY BEALS
   NOTARY PUBLIC, STATE OF NEW YORK
          NO. 01BE4907242
        Qualified in New York County
    Commission Expires on February 16, 2010


                              C-1225

ROTHKRUG ROTHKRUG & SPECTOR, LLP
ATTORNEYS AT LAW
55 WATERMILL LANE, SUITE 200
GREAT NECK, NEW YORK 11021

ADAM W. ROTHKRUG
SIMON H. ROTHKRUG, LLM
DOUGLAS M. SPECTOR

TODD DALE

TELEPHONE: 516.487.2252
718.343.0069
FACSIMILE: 516.487.2439

October 19, 2009

Nicholas E. Brusco, Esq.
165 West 74th Street
New York, NY 10023

Re:    106 West 69th Street LLC v. Smile

Dear Mr. Brusco:

This letter shall confirm that I recently met with my client, and he confirmed that he met with your brother in early June, 2009, at which time tenant gave landlord the keys to the Premises and effectively surrendered same. It is my further understanding that Landlord accepted such keys and surrender, and has been showing the space to prospective tenants since June.

Based on the foregoing, and my review of the Lease which provides for a "good guy" personal guaranty, I am confused by your repeated demands for additional monies. If Landlord feels the need for a formal surrender document, my client is and has always been willing to execute same.

Yours truly,

SIMON H. ROTHKRUG

cc:    Gary Schaeffer

# NICHOLAS E. BRUSCO
ATTORNEY AT LAW
165 WEST 74TH STREET
NEW YORK, NY 10023
——
(212) 799-3205

*Lydia E. Rivera*
*Paralegal*

October 23, 2009

Rothkrug Rothkrug & Spector, LLP
55 Watermill Lane, Suite 200
Great Neck, N.Y.  11021
Attn:  Simon H. Rothkrug

> Re:    Lease and Guaranty dated as of May 1, 2008
>        For commercial premises located at
>        106 West 69th Street
>        New York, N.Y.  10023

Dear Mr. Rothkrug,

According to my client, your client gave mine the keys to assist your client in renting the premises to a potential tenant brought in by your client.

Your letter dated October 19, 2009 is a weak attempt at avoiding your client's liability under the guaranty of the lease.   There has been no acceptance of any surrender.

Thank you.

Sincerely,

NEB / ler
Enc.

237923

# MARSHAL'S LEGAL POSSESSION

Civil Court of the City of New York

**COUNTY OF** NEW YORK

**INDEX NUMBER** 82361/09

CITY OF NEW YORK
OFFICE OF THE MARSHAL
1000 GRAND CONCOURSE
BRONX, NY 10451

106 WEST 69TH STREET, LLC,

against

SMILE OPERATING LLC,

106 W. 69TH ST, GROUND FLOOR RETAIL
NEW YORK, NY 10023

11/10/09

# The Landlord has legal possession of these premises. pursuant to Warrant of Civil Court For information, contact Landlord or Agent immediately.

**THOMAS J. BIA
MARSHAL, CITY of NEW YORK
BADGE No. 9
1000 GRAND CONCOURSE
BRONX, NEW YORK 10451
TEL: 718-681-8878**

THOMAS J. BIA
MARSHAL

N. B. Any one who defaces this legal notice or cause same to be defaced in any way is guilty of a misdemeanor and will be punished to the full extent of the law.

*INQUIRY:TENANT STATUS*                    (F1:Notes Screen  F6:Phone  F10:Addl Names)

BUILDING: 125  APT-NO: STORE    **OR TENANT-ID:** COM11   SMILE OPERATING, LLC
BALANCE:  86,809.35  SECURITY:  30,000.00 LSE-EXP: 04/30/18 LEGAL:

| DATE | DESCRIPTION | BILLED | PAID | DATE | CASH | CHECKNO |
|------|-------------|--------|------|------|------|---------|
| 06-12-09 | LATE CHARGES | 576.80 | | | | |
| 07-01-09 | RENT | 11536.00 | | | | |
| 07-11-09 | LATE CHARGES | 576.80 | | | | |
| 08-01-09 | RENT | 11536.00 | | | | |
| 08-07-09 | LATE CHARGES | 576.80 | | | | |
| 09-01-09 | RENT | 11536.00 | | | | |
| 09-12-09 | LATE CHARGES | 576.80 | | | | |
| 10-01-09 | RENT | 11536.00 | | | | |
| 10-14-09 | LATE CHARGES | 576.80 | | | | |
| 11-01-09 | RENT | 11536.00 | | | | |
| 11-13-09 | LATE CHARGES | 576.80 | | | | |
| 11-19-09 | REAL ESTATE TAX | 2596.55 | | | | |
| 12-01-09 | RENT | 11536.00 | | | | |
| 01-01-10 | RENT | 11536.00 | | | | |

** END**

**ROLL KEYS TO CONTINUE**

```
      86,809.35
   +  75,119 -
   _____
      161,928.35
     (30,000 -)
   _____
      131,928.35
```

DIFFERENCE IN FUTURE
RENT
NEW LEASE TO OLD LEASE

SECURITY

TENANT:  **125COM11**   **S&H OPERATING, LLC**

```
                    BILLING CHARGES
                    ===============

     CD DESCRIPTION        T     AMOUNT      ON    OFF

     01 RENT               R   11536.00   05 09 05 10
     01 RENT               R   11882.08   05 10 05 11
     01 RENT               R   12238.55   05 11 05 12
     01 RENT               R   12605.71   05 12 05 13
     01 RENT               R   12983.89   05 13 05 14
     01 RENT               R   13373.41   05 14 05 15
     01 RENT               R   13774.62   05 15 05 16
     01 RENT               R   14187.86   05 16 05 17
     01 RENT               R   14613.50   05 17 05 18
```

8 yr 5 mos

```
    F3: Return      F5: Display Archive     ROLL KEYS: Page Up/Down
```

TENANT: **125COM21** Pg 34 of 39  CAFE, CORP.

```
                    BILLING CHARGES
                    ===============

    CD DESCRIPTION       T     AMOUNT      ON     OFF

    01 RENT              R   11000.00   02 10  10 10
    01 RENT              R   11330.00   10 10  10 11
    01 RENT              R   11670.00   10 11  10 12
    01 RENT              R   12020.00   10 12  10 13
    01 RENT              R   12381.00   10 13  10 14
    01 RENT              R   12752.00   10 14  10 15
    01 RENT              R   13135.00   10 15  10 16
    01 RENT              R   13529.00   10 16  10 17
    01 RENT              R   13935.00   10 17  10 18
    01 RENT              R   14353.00   10 18  10 19



    F3: Return     F5: Display Archive     ROLL KEYS: Page Up/Down
```

DIFFERENCE IN RENT

1 of 2

106 w 69

| | $ | | $ | | $ |
|---|---|---|---|---|---|
| FEB '10 | 536 – | MAY '12 | 935 – | AUG '14 | 992 – |
| MARCH '10 | 536 – | JUNE '12 | " | SEP '14 | 992 |
| APRIL '10 | 536 – | JULY '12 | " | OCT '14 | 621 – |
| MAY '10 | 882.08 | AUG '12 | " | NOV '14 | " |
| JUNE '10 | 882.08 | SEP '12 | " | DEC '14 | " |
| JULY '10 | 882.08 | OCT '12 | 585 – | JAN '15 | " |
| AUG '10 | 882.08 | NOV '12 | " | FEB '15 | " |
| SEP '10 | 882.08 | DEC '12 | " | MAR '15 | " |
| OCT '10 | 552 – | JAN '13 | " | APRIL '15 | " |
| NOV '10 | " | FEB '13 | " | MAY '15 | 1022 – |
| DEC '10 | " | MARCH '13 | " | JUNE '15 | " |
| JAN '11 | " | APRIL '13 | " | JULY '15 | " |
| FEB '11 | " | MAY '13 | 963 – | AUG '15 | " |
| MAR '11 | " | JUNE '13 | " | SEP '15 | " |
| APRIL '11 | " | JULY '13 | " | OCT '15 | 639 – |
| MAY '11 | 908.55 | AUG '13 | " | NOV '15 | 639 – |
| JUNE '11 | 908 – | SEP '13 | " | DEC '15 | " |
| JULY '11 | " | OCT '13 | 602 – | JAN '16 | " |
| AUG '11 | " | NOV '13 | " | FEB '16 | " |
| SEP '11 | " | DEC '13 | " | MARCH '16 | " |
| OCT '11 | 568 – | JAN '14 | " | APR '16 | " |
| NOV '11 | " | FEB '14 | " | MAY '16 | 1052 – |
| DEC '11 | " | MARCH '14 | " | JUNE '16 | 1052 – |
| JAN '12 | " | APRIL '14 | " | JULY '16 | " |
| FEB '12 | " | MAY '14 | 992 – | AUG '16 | " |
| MARCH '12 | " | JUNE '14 | " | SEP '16 | " |
| APRIL '12 | " | JULY '14 | " | OCT '16 | 658 – |

DIFFERENCE IN RENT

(2 of 2)

106 w 69

| | |
|---|---|
| NOV '16 | p 658 — |
| DEC '16 | " |
| JAN '17 | " |
| FEB '17 | " |
| MARCH '17 | " |
| APL '17 | " |
| MAY '17 | 1084 — |
| JUNE '17 | " |
| JULY '17 | " |
| AUG '17 | " |
| SEP '17 | " |
| OCT '17 | 678 — |
| NOV '17 | " |
| DEC '17 | " |
| JAN '18 | " |
| FEB '18 | " |
| MARCH '18 | " |
| APRIL '18 | " |

B  75,119 —

Reorder No. 5105
JULIUS BLUMBERG, INC.
NYC 10013
® 10% P.C.W.

Affirmation ___ state that I am
                    the attorney(s) of record for                                        in the within
action; I have read the foregoing                                   and know the contents thereof;
the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters
I believe it to be true. The reason this verification is made by me and not by

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

I affirm that the foregoing statements are true, under the penalties of perjury.
Dated:                                                                    ....................................................
                                                                          The name signed must be printed beneath
STATE OF NEW YORK, COUNTY OF                              ss.:
I, the undersigned, being duly sworn, depose and say: I am
    ☐   Individual      in the action; I have read the foregoing
        Verification
                                              and know the contents thereof; the same is true to my own knowledge, except
                       as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true.
    ☐   Corporate      the                      of
        Verification   a                              corporation and a party in the within action; I have read the foregoing
                                              and know the contents thereof; and the same is true to my own knowledge,
        except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true. This
        verification is made by me because the above party is a corporation and I am an officer thereof.
The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

Sworn to before me on                                                     ....................................................
                                                                          The name signed must be printed beneath

STATE OF NEW YORK, COUNTY OF  **NEW YORK**            ss.:        (If more than one box is checked—indicate after names type of service used.)
I, the undersigned, being sworn, say: I am not a party to the action, am over 18 years of age and reside at
                                    **NEW YORK, N.Y.**
On  **NOVEMBER** ⟨ ⟨  **2010**    I served the within **CREDITOR'S RESPONSE TO DEPTOR'S REQUEST**
    ☒   Service      by mailing a copy to each of the following persons at the last known address set forth after each name below.
        By Mail
        Personal    by delivering a true copy of each personally to each person named below at the address indicated. I knew each person served
    ☐   Service on   to be the person mentioned and described in said papers as *a party therein:*
        Individual
        Service by   by transmitting a copy to the following persons by ☐ FAX at the telephone number set forth after each name below ☐ E-MAIL
    ☐   Electronic   at the E-Mail address set forth after each name below, which was designated by the attorney for such purpose, and by mailing a
        Means        copy to the address set forth after each name.
        Overnight
    ☐   Delivery     by dispatching a copy by overnight delivery to each of the following persons at the last known address set forth after each name
        Service      below.

    WAYNE GREENWALD, P.C., 475 PARK AVENUE SOUTH – 26th FLOOR
    NEW YORK, N.Y. 10016

    BRIAN MASUMOTO, ESQ., OFFICE OF THE UNITED STATES TRUSTEEE,
    33 WHITEHALL STREET – 21st FLOOR, NEW YORK, N.Y. 10004

Sworn to before me on **NOVEMBER** ⟨⟨  **2010**          ....................................................
                                                          The name signed must be printed beneath
                                                          ROBERT L. LEWIS

BANKRUPTCY COURT : SOUTHERN DISTRICT OF
STATE OF NEW YORK, COUNTY OF                    CASE XXXX No.09-17126   YearMG

In re

GARY B. SCHAEFFER,

Debtor

## CREDITOR'S RESPONSE TO DEBTOR'S REQUEST

Robert L. Lewis

*Attorney(s) for* 109 West 69th Street LLC

*Office and Post Office Address, Telephone*

Suite - 1602
Seven Penn Plaza
New York, New York 10001
(212) 687-3440

To

Signature (Rule 130-1.1-a)

_____
Print name beneath

Service of a copy of the within is hereby admitted.

Dated: _____

Attorney(s) for

PLEASE TAKE NOTICE:

☐ NOTICE OF ENTRY

that the within is a *(certified) true copy of a*
duly entered in the office of the clerk of the within named court on

☐ NOTICE OF SETTLEMENT

that an order                                        of which the within is a true copy
will be presented for settlement to the HON.                one of the judges of the
within named Court, at
on                              at                M.

Dated,

Yours, etc.

Robert L. Lewis